# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMY MALDONADO**<br>**5789 Ladues End Court**<br>**Fairfax, VA 22030**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**LOGLOGIC, INC.**<br>**110 Rose Orchard Way, Suite 200**<br>**San Jose, CA 95134**<br><br>       **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 1:07-cv-00066**<br>)    **(RCL)**<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND TO COMPEL ARBITRATION

Defendant, LogLogic, Inc. ("LogLogic"), by and through its undersigned attorneys, hereby move this Court for an Order dismissing the Plaintiff's Amended Complaint and compelling arbitration of all disputes raised in this action for the reasons set forth in the attached Statement of Points and Authorities in Support of the Motion to Dismiss the Amended Complaint and to Compel Arbitration.

Respectfully submitted,

**JACKSON LEWIS LLP**

By: /s/_____
Tyler A. Brown
D.C. Bar No. 480693
8614 Westwood Center Drive
Suite 950
Vienna, VA  22182
(703) 821-2189
Fax: (703) 821-2267

Date: May 30, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Defendant's Motion to Dismiss the Amended Complaint and to Compel Arbitration* and *Defendant's Statement of Points and Authorities in Support of the Motion to Dismiss the Amended Complaint and to Compel Arbitration* were sent by United States Mail, postage prepaid, on this 30th day of May, 2007, to:

Micah Salb, Esq.
Lippman, Semsker & Salb, LLC
7700 Old Georgetown Road, Suite 500
Bethesda, MD 20814


_/s/_____
Tyler A. Brown

## DUTY TO CONFER UNDER LCVR 7

As this motion is dispositive in nature, no duty to confer is required. Notwithstanding, Defendant did confer with Plaintiff's counsel in an effort to avoid filing this motion.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMY MALDONADO** ) | |
| **5789 Ladues End Court** ) | |
| **Fairfax, VA 22030** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:07-cv-00066** |
| ) | **(RCL)** |
| **LOGLOGIC, INC.** ) | |
| **110 Rose Orchard Way, Suite 200** ) | |
| **San Jose, CA 95134** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED COMPLAINT AND**
**TO COMPEL ARBITRATION**

Defendant, LogLogic, Inc. ("LogLogic"), by and through its undersigned counsel, hereby files a memorandum in support of its motion to compel arbitration as follows:

**PROCEDURAL HISTORY**

Plaintiff initiated the present suit by filing a Complaint with the United States District Court for the District of Columbia on or about January 11, 2007. Prior to service of the Complaint, the court granted Plaintiff's counsel's motion to withdraw due to "irreconcilable differences" on March 7, 2007. Plaintiff retained new counsel and had her summons reissued and, by agreement, served her Complaint on opposing counsel on April 18, 2007. On May 8, 2007, following a consent motion by the parties, the court granted Defendant additional time to file its responsive pleading. Prior to the due date for filing a responsive pleading, the Plaintiff filed the instant Amended Complaint.

1

## STATEMENT OF FACTS

Plaintiff is a former employee of LogLogic, a Delaware corporation headquartered in San Jose, California. During her employment with Defendant, Plaintiff worked as a salesperson based in Northern Virginia. On November 21, 2004, Plaintiff signed her acceptance and agreement to Defendant's offer of employment ("Offer Letter"). (Declaration of Richard Hornstein ("Hornstein Decl."), Exhibit A). The Offer Letter, signed at the time of her hiring, emphasized that the Plaintiff would be required, "[a]s a condition of her employment, to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" as well as outlining the requirement of binding arbitration to resolve disputes between Plaintiff and the Defendant. Specifically, the Offer Letter provides, in pertinent part,

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all but the first $125 of the arbitration fees.

(Hornstein Decl., Exhibit A, pg. 2).

Plaintiff signed and returned a copy of the At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Arbitration Agreement") on February 18, 2005. (Hornstein Decl., Exhibit B). In section 10 of the Arbitration Agreement, entitled "*Arbitration and Equitable Relief,*" Plaintiff agreed to subject to "binding arbitration" "any and all controversies, claims, or disputes … arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company[.][Original in all capital letters.]"

Through her signature and acceptance of the Offer Letter and the Arbitration Agreement, Plaintiff recognized the terms and conditions of her employment, including the mandatory

arbitration of all "employment-related disputes", including those that Defendant may have with her. The Arbitration Agreement expands upon the general terms of arbitration outlined in the Offer Letter, including that the arbitration will be administered by the American Arbitration Association ("AAA"), a neutral arbitrator will be selected consistent with the AAA's "National Rules for the Resolution of Employment Disputes," and other provisions emphasizing the bilateral nature of the agreement.   In addition, the Arbitration Agreement calls for the agreement to be governed by the laws of the State of California.

## ARGUMENT

### A.     The Arbitration Agreement Is Enforceable Under Both Federal and State Law and Covers Plaintiff's Claims.

LogLogic is entitled to an order compelling arbitration in this case consistent with the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq.  The FAA establishes the validity and enforceability of written agreements to arbitrate disputes.  Under the FAA, a provision in an agreement to settle controversies between the parties by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)  In support of the enforcement of agreements to arbitrate, the United States Supreme Court has held the FAA applies to employment contracts:  "We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."  (Circuit City Stores, Inc. v. Adams (2001) 532 U.S. 105, 123 [121 S.Ct. 1302].)  "[A]rbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." (Id.)

Because arbitration is a highly favored means of settling disputes, the United States Supreme Court has stated that arbitration agreements "must be 'rigorously enforced.'"  (Perry v. Thomas (1987) 482 U.S. 483, 490 [107 S.Ct. 2520] [arbitration agreement upheld and arbitration

compelled of claim for unpaid wages under California Labor Code 229].) Indeed, in <u>Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.</u> (1983) 460 U.S. 1, 24-25 103 S.Ct. 927, the Supreme Court declared:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is a construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability**.**

Like the FAA, the California Arbitration Act ("CAA"), codified at California Code of Civil Procedure Section 1280 <u>et seq.</u>, also provides a comprehensive scheme for enforcing privately contracted arbitration agreements. The CAA does not "restrict the enforcement of arbitration agreements" any more than the FAA would. (<u>Armendariz v. Foundation Health Psychare Svcs., Inc.</u> (2000) 24 Cal. 4th 83, 98; <u>see</u> <u>also</u>, <u>Allied-Bruce Terrainix Cos., Inc. v. Dobson</u> (1995) 513 U.S. 265, 272) [it is well established law "that the Federal Arbitration Act preempts state law . . . and that state courts cannot apply state statutes that invalidate arbitration agreements"]; <u>Warren-Guthrie v. Health Net</u> (1999) 84 Cal.App.4th  804, 812) [FAA preempts <u>any provision</u> of the California Arbitration Act "used to avoid or delay arbitration of a contract dispute governed by the FAA"].) Specifically, the CAA states in pertinent part that:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such a controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists.

(Cal. Code Civ. Proc. § 1281.2.) In other words, where, as here, a valid agreement to arbitrate exists, the Court must order the parties' dispute to arbitration.

This result is consistent with well established public policy which strongly favors the enforcement of arbitration agreements. (<u>See</u>, <u>e.g.</u>, <u>Moses H. Cone</u>, <u>supra</u> 460 U.S. at 24; <u>Circuit City</u>, <u>supra</u>, 532 U.S. at 123  ["[a]rbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation..."].) In

4

California, arbitration is strongly favored as a speedy and inexpensive method of dispute resolution." (<u>Macaulay v. Norlander</u> (1992) 12 Cal.App.4th 1, 6; <u>Armendariz</u>, <u>supra</u> 24 Cal.4th at 97 [citing <u>Broughton v. Cigna Healthplans</u> (1999) 21 Cal.4th 625, 642]; <u>see also</u> <u>Cione v. Foresters Equity Sves., Inc.</u> (1997) 58 Cal.App.4th 625, 642 ["A heavy presumption weighs the scales in favor of arbitrability..."]; <u>Madden v. Kaiser Foundation Hosp.</u> (1976) 17 Cal.3d 699, 705-06 ["Arbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts...."])

Indeed, arbitration agreements should be "liberally interpreted" and arbitration must be ordered "unless the agreement clearly does not apply to the dispute in question" and any "doubts should be resolved in favor of sending the parties to arbitration." (<u>Manna v. Doctors' Mgmt. Co.</u> (1994) 27 Ca1.App.4th 1186, 1189.) In fact, the public policy in favor of arbitration is so strong that California courts have held that an employee is "bound by the provisions of [an] [arbitration] agreement regardless of whether [he] read it or [was] aware of the arbitration clause when [he] signed the document." (<u>Brookwood v. Bank of America, NT&SA, et al</u>. (1996) 45 Cal.App.4th 1667, 1673-74 [citations omitted].)

Because California has a "strong public policy in favor of arbitration," (<u>Moncharsh v. Heily & Blasé</u> (1992) 3 Cal. 4th 1, 9), "a heavy presumption weighs the scales in favor of arbitrability . . ." (<u>Cione, supra</u>, (1997) 58 Cal.App.4th at 642.) For example, in <u>Baker v. Aubry</u> (1989) 216 Cal.App.3d 1259, <u>cert. denied</u>, (1990) 498 U.S. 820, 111 S.Ct. 66, the court compelled arbitration of an employee's statutory claim for overtime pay under California law. The court held the "claim for overtime pay, even if based on a statutory right, is subject to arbitration. The broad language of the arbitration agreement here and the strong federal policy favoring arbitration of such agreements mandate the arbitrability of her claim." (<u>Id</u>. at 1266.) Given the strong public policy favoring the enforcement of arbitration agreements, this Court should give effect to the Parties' agreement and compel Plaintiff to pursue her claims against LogLogic in the arbitral forum.

5

**B.**    **The Agreement Is Fully Enforceable Under All Applicable Standards**
**And The Court Should Compel Arbitration.**

The California Supreme Court has held that statutory claims are subject to arbitration where the applicable agreement is not unconscionable.  To avoid unconscionability, certain provisions must be included in the agreement:  (1) it must be mutual in its obligations; (2) it must provide for a neutral arbitrator; (3) there may be no limitations on statutory remedies; (4) it must contain a provision for adequate discovery; (5) the arbitrator must issue a written arbitration award setting forth the essential findings and conclusions on which the award is based; and (6) no costs unique to arbitration must be incurred by the employee.  Armendariz, 24 Cal.4th 83.

The Parties' agreement to arbitrate complies with all of the requirements set forth in Armendariz.  As described above, the Offer Letter provides for all of these considerations. (Hornstein Decl., Exhibit A, pg. 2).  In addition, the Arbitration Agreement clarifies and expands upon the language of the Offer Letter, delineating examples of disputes covered including "any statutory claims under state or federal law, including but not limited to, claims under Title VII of the Civil Rights Act of 1964[.][Original in all capital letters.]"  (Hornstein Decl., Exhibit B 10.A)

The Arbitration Agreement also contains repeated references to the bilateral nature of the agreement.  These references include that "neither [the Plaintiff] nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration" and "that *any* party may also petition the Court for injunctive relief where *either* party alleges or claims a violation of the Employment, Confidential Information, Invention Assignment, and Arbitration Agreement.  [Emphasis added, original quotes in all capital letters.]"  (Hornstein Decl., Exhibit B, 10.C and D).

The Arbitration Agreement also clarifies that the arbitration will be conducted in accordance with the rules of the AAA and that "the Company will pay for the administrative or hearing costs charged by the arbitrator or AAA, except that" Plaintiff is responsible for the first $125.00 of any filing fees associated with any arbitration initiated by her.  This requirement for

payment of filing fees is not unreasonable as such costs are not unique to the arbitral forum and the plaintiff in a court action will bear such costs.[1]

Plaintiff agreed to be bound by the agreement to arbitrate.  The provisions of the agreement to arbitrate are bilateral, fair and offer Plaintiff all remedies she could obtain through court action.  Because the Parties' agreement to arbitrate complies with all the mandates of Armendariz, it is not unconscionable and is unquestionably valid.  Thus, Plaintiff's claims are subject to arbitration under state and federal law.  The Agreement involves no surrender of statutory protection or benefits.  It simply requires Plaintiff to substitute the agreement's arbitration rules for a judicial forum, and in no way forecloses or limits her substantive remedies in the event she prevails.  Plaintiff was given clear notice of, and expressly agreed to, a requirement of arbitration in lieu of a judicial forum for resolution of any alleged employment disputes when she agreed to arbitration as a condition of her employment with LogLogic.

## C.    This Action Should Be Dismissed or, In the Alternative, Stayed During Arbitration

When a petition to compel arbitration is made, the court shall "stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."  See CCP § 1281.4; 9 U.S.C. §§ 3 and 4.

However, while the present proceedings should, at the very least, be stayed while arbitration is pending, dismissal is proper where, as here, the arbitration clause is clearly broad enough to cover Plaintiff's claims.   See, Sparling v. Hoffman Construction Co. (9th Cir. 1988) 864 F.2d 635, 638.  As discussed above, Plaintiff's claims are subject to arbitration.  LogLogic therefore requests that this case be dismissed with prejudice in its entirety and the parties ordered

---

[1] In fact, the $125.00 figure is a fraction of the $350.00 fee for filing the instant action.

to arbitration.  In the alternative, LogLogic requests the Court stay the entire action as to all parties pending the completion of arbitration.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss the Amended Complaint and to Compel Arbitration, should be granted, and Plaintiff should be required to submit her claims to arbitration in accordance with the Parties' agreement to arbitrate.  LogLogic respectfully requests the Court enforce the Parties' agreement and order this matter to arbitration. LogLogic further requests the Court dismiss the Amended Complaint, or, in the alternative, stay the entire action as to all parties pending the completion of arbitration

Respectfully submitted,

**JACKSON LEWIS LLP**

By:    /s/_____
       Tyler A. Brown
       D.C. Bar No. 480693
       8614 Westwood Center Drive
       Suite 950
       Vienna, VA  22182
       (703) 821-2189
       Fax: (703) 821-2267

Date: May 30, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMY MALDONADO<br>5789 Ladues End Court<br>Fairfax, VA 22030<br><br>                Plaintiff,<br><br>    v.<br><br>LOGLOGIC, INC.<br>110 Rose Orchard Way, Suite 200<br>San Jose, CA 95134<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:07-cv-00066<br>    (RCL) |

## DECLARATION OF RICHARD HORNSTEIN

1.      My name is Richard Hornstein. I am over 18 years of age and have personal knowledge of the facts contained in this declaration.

2.      I am employed by LogLogic, Inc. ("LogLogic"). I am the Chief Financial Officer for LogLogic.

3.      LogLogic employed Amy Maldonado from December 2004 through November 2005.

4.      The document attached to this declaration as Exhibit A is a true and correct copy of the offer letter for employment extended to Amy Maldonado by LogLogic and signed by her on November 21, 2004 and returned to LogLogic.

5.      The document attached to this declaration as Exhibit B is a true and correct copy of the At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement provided to Amy Maldonado by LogLogic and signed by her on February 18, 2005 and returned to LogLogic.

I, Richard Hornstein, swear under a penalty of perjury of the laws of the United States that the foregoing 5 numbered paragraphs are true and correct.

Dated: 5/29/0 7

Richard Hornstein

# Exhibit A

# logic™

November 10, 2004

Amy Maldonado
5789 Ladues End Crt.
Fairfax, VA 22030

Dear Amy:

I am pleased to offer you a position with LogLogic, Inc. (the "Company"), as its Federal Sales Director reporting to the Vice President of Sales. If you decide to join us, you will receive a base monthly salary of $9,583.33, which will be paid in accordance with the Company's normal payroll procedures. Your total On-Target Earnings (OTE) including your base and sales incentives will be $230,000 per annum for calendar year 2005 based on your achieving your sales quota of $1,500,000 for calendar year 2005. The sales incentives will be earned and paid in accordance with the Company's then current annual sales incentive compensation plan. As an employee, you will also be eligible to receive certain employee benefits including 401(k), medical and dental plans. In addition to your base monthly salary, for each of the first 4 months of your employment (December 1, 2004 through March 31, 2005), you will be paid a non-recoverable draw of $3,000 per month. You should note that the Company may modify job titles, salaries and benefits from time to time as it deems necessary. For purposes of this Offer Letter, the "Company" shall include the Company and any successor-in-interest to the Company.

In addition, if you decide to join the Company, it will be recommended at the first meeting of the Company's Board of Directors following your start date that the Company grant you an option to purchase 40,000 shares (the "Shares") of the Company's Common Stock at a price per share equal to the fair market value per share of the Common Stock on the date of grant, as determined by the Company's Board of Directors. 25% of the Shares subject to the option shall vest 12 months after the date your vesting begins, which shall be your first date of employment at the Company, subject to your continuing employment with the Company. The remaining Shares shall vest monthly over the next 36 months in equal monthly amounts subject to your continuing employment with the Company. This option grant shall be subject to the terms and conditions of the Company's Stock Option Plan and Stock Option Agreement.

The Company is excited about your joining and looks forward to a beneficial and productive relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice. We request that, in the event of resignation, you give the Company at least two weeks notice.

LogLogic, Inc.
1154 E. Arques Ave.
Sunnyvale, CA 94085

t: 408 215 5900
f: 408 774 1752
www.loglogic.com

For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

We also ask that, if you have not already done so, you disclose to the Company any and all agreements relating to your prior employment that may affect your eligibility to be employed by the Company or limit the manner in which you may be employed. It is the Company's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company. Similarly, you agree not to bring any third party confidential information to the Company, including that of your former employer, and that in performing your duties for the Company you will not in any way utilize any such information.

As a Company employee, you will be expected to abide by the Company's rules and standards. Specifically, you will be required to sign an acknowledgment that you have read and that you understand the Company's rules of conduct which are included in the Company Handbook which the Company will soon complete and distribute.

As a condition of your employment, you are also required to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement which requires, among other provisions, the assignment of patent rights to any invention made during your employment at the Company, and non-disclosure of Company proprietary information. In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all but the first \$125 of the arbitration fees. Please note that we must receive your signed Agreement before your first day of employment.

To accept the Company's offer, please sign and date this letter in the space provided below. A duplicate original is enclosed for your records. If you accept our offer, your first day of employment will be no later than December 1, 2004. This letter, along with any agreements relating to proprietary rights between you and the Company, set forth the terms of your employment with the Company and supersede any prior representations or agreements including, but not limited to, any representations made during your recruitment, interviews or pre-employment negotiations, whether written or oral. This letter, including, but not limited to, its at-will employment provision, may not be modified or amended except by a written agreement signed by the CEO of the Company and you. This offer of employment will terminate if it is not accepted, signed and returned by 5:00 p.m., Pacific Standard Time, on Friday, November 12, 2004.

We look forward to your favorable reply and to working with you at LogLogic, Inc.

Sincerely,

By:    Christopher Brennan
Title:   CEO

Agreed to and accepted:

Signature:

Printed Name: Amy Maldonado

Date Signed:    11/21/04

Start Date: December 1, 2004

Enclosures
Duplicate Original Letter
At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement

# Exhibit B

T: Mini Tong

FROM: Amy HALDGRADE

2/18/05

Epages ETAL

Employee  *Amy Mildrade*

## LOGLOGIC, INC.
### AT WILL EMPLOYMENT, CONFIDENTIAL INFORMATION,
### INVENTION ASSIGNMENT,
### AND ARBITRATION AGREEMENT

As a condition of my employment with LogLogic, Inc., its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following:

1.    *At-Will Employment.*

I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE PRESIDENT OF THE COMPANY. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

2.    *Confidential Information.*

A.    *Company Information.* I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that "Confidential Information" means any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

B.    *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

C.    *Third Party Information.* I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.    *Inventions.*

A.    *Inventions Retained and Licensed.* I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or service a Prior Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

May 04 07 10:40a    LogLogic    4083218609    p.7

Feb 18 05 09:11a    703-385-3068    703-385-3068    p.2

B.      *Assignment of Inventions.* I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3.F below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

C.      *Inventions Assigned to the United States.* I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

D.      *Maintenance of Records.* I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

E.      *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

F.      *Exception to Assignments.* I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

4.      *Conflicting Employment.*

I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5.      *Returning Company Documents.* I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to paragraph 3.D. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit C.

6.      *Notification of New Employer.* In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7.      *Solicitation of Employees.* I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit,

-2-

induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

8.      *Conflict of Interest Guidelines.* I agree to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit D hereto.

9.      *Representations.* I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

10.      *Arbitration and Equitable Relief.*

A.      *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE. AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

B.      *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND THAT THE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH ITS NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION AND MOTIONS TO DISMISS AND DEMURRERS, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING ATTORNEY'S FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW. I UNDERSTAND THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR AAA EXCEPT THAT I SHALL PAY THE FIRST $125.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION I INITIATE. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE EXTENT THAT THE AAA'S NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES CONFLICT WITH THE RULES, THE RULES SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING.

C.      *Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT. ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW WHICH THE COMPANY HAS NOT ADOPTED.

D.      *Availability of Injunctive Relief.* IN ADDITION TO THE RIGHT UNDER THE RULES TO PETITION THE COURT FOR PROVISIONAL RELIEF, I AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THE EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AGREEMENT BETWEEN ME AND THE COMPANY OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NONSOLICITATION OR

-3-

LABOR CODE §2870. I UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS FEES.

E.    *Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

F.    *Voluntary Nature of Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

11.    *General Provisions.*

A.    *Governing Law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the State of California. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

B.    *Entire Agreement.* This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the President of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

C.    *Severability.* If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

D.    *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Date: 2/8/05

Signature

Name of Employee (typed or printed)

Witness:

Signature

Name (typed or printed)

-4-

## Exhibit A

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

_____ No inventions or improvements

_____ Additional Sheets Attached

Signature of Employee: _Jay Maldonado_

Print Name of Employee: _Jay MALDONADO_

Date: _2/18/05_

## Exhibit B

### CALIFORNIA LABOR CODE SECTION 2870
### INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENT

"(a)      Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)      Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)      Result from any work performed by the employee for the employer.

(b)      To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

Exhibit C

LOGLOGIC. INC.

TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to LogLogic, Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's Employment, Confidential Information, Invention Assignment and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I further agree that, in compliance with the Employment, Confidential Information, Invention Assignment, and Arbitration Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months from this date, I will not solicit, induce, recruit or encourage any of the Company's employees to leave their employment.

Date: 2/16/'5

_____
(Employee's Signature)

_____
(Type/Print Employee's Name)

### Exhibit D

### LOGLOGIC, INC.

### CONFLICT OF INTEREST GUIDELINES

It is the policy of LogLogic, Inc. to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees and independent contractors must avoid activities which are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations which must be avoided. Any exceptions must be reported to the President and written approval for continuation must be obtained.

1.  Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended. (The Employment, Confidential Information, Invention Assignment and Arbitration Agreement elaborates on this principle and is a binding agreement.)

2.  Accepting or offering substantial gifts, excessive entertainment, favors or payments which may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3.  Participating in civic or professional organizations that might involve divulging confidential information of the Company.

4.  Initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement.

5.  Initiating or approving any form of personal or social harassment of employees.

6.  Investing or holding outside directorship in suppliers, customers, or competing companies, including financial speculations, where such investment or directorship might influence in any manner a decision or course of action of the Company.

7.  Borrowing from or lending to employees, customers or suppliers.

8.  Acquiring real estate of interest to the Company.

9.  Improperly using or disclosing to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

10. Unlawfully discussing prices, costs, customers, sales or markets with competing companies or their employees.

11. Making any unlawful agreement with distributors with respect to prices.

12. Improperly using or authorizing the use of any inventions which are the subject of patent claims of any other person or entity.

13. Engaging in any conduct which is not in the best interest of the Company. Each officer, employee and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMY MALDONADO**<br>**5789 Ladues End Court**<br>**Fairfax, VA 22030**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**LOGLOGIC, INC.**<br>**110 Rose Orchard Way, Suite 200**<br>**San Jose, CA 95134**<br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 1:07-cv-00066**<br>     **(RCL)** |

## ORDER DISMISSING PLAINTIFF'S CASE WITH PREJUDICE AND
## <u>COMPELLING BINDING ARBITRATION</u>

Having reviewed Defendant's Motion to Dismiss the Amended Complaint and to Compel Arbitration, and any Response thereto, as well as any Reply by Defendant,

IT IS HEREBY ORDERED that Plaintiff's lawsuit is precluded by a valid Arbitration Agreement.  Accordingly, Plaintiff's case is DISMISSED with prejudice and she is ORDERED to submit her claims to binding arbitration.

This _____ day of _____, 2007.


_____
Judge, U.S. District Court for the District of Columbia