**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
**AMY MALDONADO,**                      )
                                        )
            **Plaintiff,**              )
                                        )
      **v.**                            )          **Civil No. 07-00066 (RCL)**
                                        )
**LOGLOGIC, INC.,**                     )
                                        )
            **Defendant.**              )
_____)


## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on defendant's Motion [40] for Summary

Judgment.  In sum, defendant LogLogic, Inc. ("LogLogic" or "defendant") terminated

plaintiff Amy Maldonado ("Maldonado" or "plaintiff") from her employment at

LogLogic.  Maldonado now brings three[1] causes of action as a result of this discharge:

(1) that she was discriminated against because of her sex in violation of Title VII upon

being terminated after announcing her pregnancy; (2) breach of contract; and (3) breach

of the implied covenant of good faith and fair dealing.  (Pl.'s Second Am. Compl., ¶ 25-

53.)

Upon consideration of the defendant's motion, plaintiff's opposition, defendant's

reply brief, the applicable law, and the entire record herein, the Court concludes that

defendant's motion shall be granted. The Court's reasoning is set forth below.

---

[1] The parties have voluntarily agreed to dismiss Count II of plaintiff's Second Amended Complaint, her
claim pursuant to the D.C. Wage Payment Act, D.C. Code § 32-1301, *et seq*.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mills v. Winter*, 540 F. Supp. 2d 178, 183 (D.D.C. 2008) (Friedman, J.); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

To determine if there is any genuine issue of material fact, this Court is to view the record, facts, and all reasonable inferences in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970).  A genuine issue of material fact is one which could affect the outcome of the litigation.  *Celotex*, 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### 1. Title VII Sex Discrimination

Plaintiff Maldonado alleges Title VII sex discrimination stemming from her discharge as an employee at LogLogic.  Maldonado claims this discharge was prompted by the defendant coming to learn she was pregnant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by the Civil Rights Act of 1991 ("Title VII") and the Pregnancy Discrimination Act.  (Pl.'s Second Am. Compl. 1, ¶ 1.)

This Court will apply the shifting burdens test to determine whether plaintiff's discrimination claim should go to a jury.  In the classic *McDonnell Douglas* test, the first burden is on the plaintiff to establish a *prima facie* case of discriminatory discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

Defendant argues that Maldonado's claim of discrimination should be dismissed because she cannot make out a *prima facie* case.  Generally, a *prima facie* case of discriminatory discharge requires a showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) she was replaced by a person of equal or lesser ability who is outside the protected class. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993); *Park v. Washington Metro. Area Transit Auth.*, 892 F.Supp. 5, 10 (D.D.C. 1995), *aff'd*, 107 F.3d 924 (D.C. Cir. 1996).

However, plaintiff contends that an analysis as to whether she can establish a *prima facie* case is not appropriate at the summary judgment stage. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., 13.) Indeed,

> Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.

*Brady v. Office of the Sergeant of Arms*, 520 F. 3d 490, 495 (D.C. Cir. 2008).  LogLogic essentially maintains that it had a legitimate and non-discriminatory business reason for firing Maldonado, an at-will employee. (Reply Mem. in Supp. of Def.'s Mot. for Summ. J., 3.)

The central question this Court must determine in ruling on defendant's motion for summary judgment is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee

on the basis of…sex….”  *Brady* 520 F. 3d at 495; *George v Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005).

In sum, defendant LogLogic's asserted non-discriminatory reason for plaintiff's dismissal is that (1) her sales performance continued to be dismal after being placed on a Performance Improvement Plan ("PIP"); and (2) "she wasted her supervisor's time by having him fly across the country for a meeting with a key customer that she failed to arrange and which never occurred." (Def.'s Mem., 1.)  The burden will, then, shift to the plaintiff to provide sufficient evidence that defendant's proffered explanation is, in fact, pretext for sex discrimination.  Maldonado has not met this burden.

As both the plaintiff and defendant concede, the Court should not make credibility determinations at this stage of the litigation. *Greenberg v. Food & Drug Admin.*, 803 F.3d 1213, 1216 (D.C. Cir. 1986).

Alan Hahn ("Hahn") was plaintiff's supervisor at LogLogic and LogLogic's Vice President of Sales.  A trier of fact could not reasonably conclude that Hahn's proffered explanation for placing Maldonado on a PIP and ultimately firing her was pretext for discrimination.  On the same day that Hahn informed plaintiff of her PIP, he also gave PIPs to two similarly underperforming male sales representatives. (Hahn Dep., 25; 63.)  In addition, plaintiff was understandably placed on this PIP because her year-to-date bookings versus quota were only 7%. (Pl.'s Ex. 11.)

After Hahn sent the PIP to Maldonado, he received an e-mail from her on October 10, 2005, stating:

> Alan, The Performance Improvement Plan you have developed for
> me comes as a surprise considering recent discussions we've had about
> justifiable reasons that have caused the entire team's underperformance.
> And, it remarkably coincides with recent advisement to you of my pregnancy.

(Pl.'s Ex. 12.)  Hahn responded to this e-mail the same day, writing, "I had not been informed by you or anyone else about your pregnancy and your email is the first information I have received in that regard." (*Id*.) He further stated that her pregnancy had no bearing on the PIP as her "performance to date…is not satisfactory." (*Id*.)  Plaintiff responded to this email the next day and, instead of challenging Hahn's assertion that he did not know of her pregnancy prior to issuing the PIP, she only challenged the portion of Hahn's e-mail regarding his statement that they had numerous discussions about her poor sales performance.  During deposition testimony, Maldonado later asserted that in the course of two phone calls between September 16 and September 28, 2005 she told Hahn she was pregnant. (Maldonado Dep. at 90-92.)

Hahn placed Maldonado on the PIP in early October, 2005, which required her to close $300,000 in sales—$100,000 in each of October, November, and December of 2005. (Pl.'s Ex. 11.)  Plaintiff was put on notice that, if her sales performance did not improve, she was at risk of dismissal.  After plaintiff did not meet her sales goal stipulated by the PIP in October, she received an e-mail from Hahn that said, "[j]ust to be clear that there is no rollover to December and if you do not meeting [sic] the $200,000 in sales target for the month of November 2005 you will be terminated." (Pl.'s Ex. 17.)

On November 3, 2005, Maldonado and Hahn attended a meeting at the Department of Energy ("DOE").  Plaintiff states that Fabricio Fermin ("Fermin"), a Sales Engineer with LogLogic, told plaintiff that he scheduled a meeting for November 3, 2005 with several people at DOE, including its CIO, Harry Hickson ("Hickson"). (Maldonado Decl., ¶ 8-9.) Hickson did not end up attending this meeting.  Defendant maintains that Hahn specifically told Maldonado that he and LogLogic needed to meet with Hickson,

and Hickson was the only reason Hahn was making the trip from Washington, D.C. to the

DOE in California.  Further, defendant maintains, "[w]hile Fermin leveraged his contacts

to set up the meeting, Hahn still believed it was Plaintiff's responsibility to set up the

meeting and get to the decision-makers." (Def.'s Mot. for Summ. J., 8.) Plaintiff was then

fired after this, as "Hahn decided to terminate Plaintiff's employment based on her failure

to confirm the meeting at DOE." (*Id*. at 9.)

      Contrary to the defendant's assertion that Hahn told Maldonado to confirm

Hickson's attendance at the meeting, and that Hickson was the only reason Hahn made

the trip, plaintiff maintains that "[a]t no time before, during or after the October 28

conference call did Hahn tell Maldonado to confirm the meeting with DOE's CIO, or to

confirm the attendance of the CIO at the meeting." (Pl.'s Opp'n to Def's Mot. for Summ.

J., 16-17.)  However, even taken to be true, this "does nothing to undercut *Hahn's*

*expectations* and Ms. Maldonado's failure to meet those expectations…." (Reply Mem. in

Support of Pl.'s Mot. for Summ. J., 4.)  Plaintiff has not presented more than a mere

colorable inference that the purported reason for plaintiff's dismissal—her poor sales

performance and her failure to confirm the meeting at DOE—is pretext for

discrimination.

      Indeed, summary judgment may be granted if the evidence is merely colorable or

not significantly probative.  *Anderson*, 477 U.S. at 249-50.  Despite an apparent temporal

connection between Hahn's issuance of the PIP and Maldonado's state of pregnancy,

plaintiff has presented insufficient evidence to show that defendant's articulated

reasoning was pretextual.

In deciding a motion for summary judgment, "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248.  Plaintiff essentially attempts to present two disputed issues of material fact relating to plaintiff's dismissal, including (1) whether Hahn knew Maldonado was pregnant prior to placing her on the PIP; and (2) whether Hahn "asked [Maldonado] to make sure that she called directly to the CIO's office and confirmed [sic] that there was a meeting, that we had a second point of confirmation that the meeting was going to happen…." (Hahn Dep. 111:10-112:4.)

In the Reply Memorandum in Support of Defendant's Motion for Summary Judgment, defendant appears to back away from the prior contention that Hahn specifically instructed Maldonado to confirm the particulars of the DOE meeting, stating, "[w]hether [Hahn] communicated that idea to Plaintiff does not prove or disprove the non-discriminatory nature of his expectation." (Reply Mem. in Support of Pl.'s Mot. for Summ. J., 5.)  This is valid.  Hahn may legitimately hold plaintiff responsible for ensuring Hickson's attendance at the meeting as plaintiff was the sales manager for the deal.  No credible evidence has been presented to give rise to the conclusion that defendant's proffered explanation for Maldonado's discharge was mere pretext for sex discrimination.  Even though Fermin was apparently responsible for the logistics of the meeting, Hahn held Maldonado responsible because she (not Fermin) was the account's manager.

At the summary judgment stage, "a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts…" and the judge is

to view all evidence in the light most favorable to the plaintiff. *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). Even viewed in the light most favorable to the plaintiff, a reasonable fact finder could not conclude defendant's legitimate and non-discriminatory business reason for plaintiff's dismissal was pretext for discrimination. Coupled with Maldonado's poor sales record and her failure to meet the first month's PIP goal, defendant's legitimate decision to fire plaintiff was non-discriminatory and there is no evidence of discriminatory intent.

Therefore, with regard to plaintiff's allegation of Title VII sex discrimination, defendant's motion for summary judgment shall be granted.

2. Breach of Contract

California law governs the terms of Maldonado's employment contract with LogLogic, as was recognized by this Court on December 5, 2007. (Mem. Op. [19] at 3.) Plaintiff's breach of contract claim alleges that "Maldonado did not receive commissions on three sales that closed within her territory in 2005." (Pl.'s Opp'n to Def.'s Mot. for Summ. J., 22-23.) However, the contractual LogLogic Sales Compensation Plan (the "Plan") expressly provides that a sales person will receive sales credit and commissions "for all sales he/she closes in the Sales Territory." (Pl.'s Ex. 7, at 2.) Because Maldonado did not close these three sales within her territory, she is not entitled to sales commissions for the sales. Simply because the sales closed *within* plaintiff's territory does not entitle her to commissions on the sales she herself did not close.

Maldonado also argues that the Plan says commissions "must be split" if another sales person closes a sale within her territory. However, defendant is correct in that the express language of the Plan is to the contrary. The Plan states that "[i]n sales situations

that overlap multiple territories, the affected salespersons are responsible for resolving any commission 'splits'" and that "[i]f the affected parties cannot resolve a split, the VP of Worldwide Sales will determine the commission split." (Pl.'s Ex. 7, at 1.)  It is, therefore, left to the salespersons involved to discuss any commission splits.  Maldonado did not do this.  Further, Maldonado did not bring this to the attention of Hahn, the VP of Worldwide Sales, until after she was terminated at LogLogic.

Indeed, in the words of the defendant, "[t]he fact that Plaintiff either chose not to engage in negotiations with her fellow salesperson, or that Hahn did not choose to split the commissions is not something that can be challenged after the fact as breach of contract." (Reply Mem. in Supp. of Def.'s Mot. for Summ. J., 10.) Therefore, with regard to plaintiff's breach of contract claim, defendant's motion for summary judgment shall be granted.

<u>3. Breach of the Covenant of Good Faith and Fair Dealing</u>

The covenant of good faith and fair dealing, implied in virtually every contract, serves to guarantee "that neither party will do anything to frustrate the right of the other to receive the benefits of the [contractual] agreement." *Kuhn v. Dep't of Gen. Servs.*, 22 Cal. App. 4th 1627, 1637-38 (1994); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683-84, 254 Cal. Rptr. 211, 765 P.2d 373 (1988).

In the instant case, plaintiff argues that her legitimate expectations were frustrated after being terminated "on bogus grounds one month before her option to purchase LogLogic stock would have vested, and one week after she conferred with [Hahn] on a dozen potential sales she was developing." (Pl.'s Opp. to Def.'s Mot. for Summ. J., 26.)

Defendant argues that the plaintiff cannot claim LogLogic breached the covenant of good faith and fair dealing by depriving her of potential *future* benefits of continued employment, in the form of future stock options that would have vested nearly a month after her discharge and the commission for potential sales she had not yet sold at the time of her discharge.  This is a valid argument, as:

> Precisely because employment at will *allows* the employer freedom to terminate the relationship as it chooses, the employer does not frustrate the employee's contractual rights merely by doing so. In such a case, "the employee cannot complain about a deprivation of the benefits of continued employment, for the agreement never provided for a continuation of its benefits in the first instance." *Hejmadi v AMFAC, Inc.* (1988) 202 Cal. App. 3d 525, 547 [249 Cal. Rptr. 5].

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350, 8 P.3d 1089 (2000).

After plaintiff's discharge, her sales accounts were reassigned to Fermin and closed by Fermin.  It would be specious and overly speculative to award the commissions to Maldonado.  Similarly, the potential benefits of unvested stock options are speculative, indeterminate, and in all likelihood a minor benefit of continued employment.  *Guz* further explains:

> …[T]he covenant [of good faith and fair dealing] prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned.

*Guz*, 24 Cal. 4th at 353, n.18.  Commission for mere *potential* sales, and an unvested option to purchase LogLogic stock, are not contractual benefits to which Maldonado was "clearly entitled" at the time of her discharge.

Furthermore, insufficient disputed questions of fact exist from which a reasonable trier of fact could conclude that Hahn intended to frustrate plaintiff's legitimate

expectations under her LogLogic employment contract.  Discharging Maldonado one

month before her option to purchase LogLogic stock would have vested and before

potential sales were finalized does not constitute an intentional frustration of the

contractual rights of Maldonado's at-will employment.  Therefore, summary judgment as

to the plaintiff's claim of breach of the implied covenant of good faith and fair dealing

shall be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment will be

granted in a separate order issued this date.

Signed by Royce C. Lamberth, Chief Judge, on July 14, 2009.